# Hess's Mill Road.

1. On a petition and order to vacate and supply a road between designated points, the viewers may adopt part of a road already laid out.
2. It is not necessary that the road thus adopted should be re-surveyed.

CERTIORARI to the Quarter Sessions of *Lancaster county.*

In August 1852, a petition was presented to the Quarter Sessions for the appointment of viewers to vacate *part* of a public road in Leacock township, Lancaster county, laid out in 1796, leading from Christian Hess's mill, on Pequea creek, to Shirley's mill, and which part was described as beginning at a stone, a corner of lands of Esther Miller and David Graff, in said public road, to a stone, a

corner of Henry Krider, and late Levi Bushong's lands, also in said public road; and to lay out another in lieu thereof, from a stone, a corner of lands of Esther Miller and David Graff, the beginning of the old road above mentioned, to a stone, a corner of lands of Jacob Reno and Esther Miller, in a *new*-laid-out road, leading from the old Philadelphia road, &c., to a stone, a corner of Henry Krider, and late Levi Bushong's lands, the termination of the old road above mentioned, confirmed at the April sessions of 1851.

Viewers were appointed, who, on 15th November, 1852, reported in favor of vacating the road as prayed for, and in favor of another road, which was described in part as, Beginning at the commencement of the aforesaid old road vacated as aforesaid, at a stone, a corner of lands of Esther Miller and David Graff, Esq., the middle of said old road, thence from said place of beginning north, &c., to a post on land of the said Esther Miller, fourteen feet, northerly, from the line dividing lands of said Esther Miller and David Graff, Esq.: thence through improved lands of the said Esther Miller, &c., parallel with the said division line of said Esther Miller and David Graff forty perches, to a post on lands of said Esther Miller fourteen feet, northerly, from said division line : thence, &c., to a stone a corner of lands of Jacob Reno, ascertained to be in a line of lands of said Esther Miller, in a new-laid-out public road, leading from the old Philadelphia road at a corner of Catharine Yates's land to a stone, a corner of lands of Henry Krider and late Levi Bushong's, the termination of the old road vacated as aforesaid, confirmed at the April Sessions of 1851.

All which said courses and distances of said road we return *as and for the middle thereof*, and being all in Leacock township, said county.

It was recommended to the Court to direct the road laid out to be opened of the breadth of 28 feet. A draft of the road was annexed.

The report was confirmed *nisi*, the road to be of the breadth of 28 feet.

Exceptions were filed in December, 1852: 1. The order calls for the laying out of a new road ending at a corner of lands of Jacob Reno and Esther Miller : the *report* lays out a road with no such termination; and, in fact, there was no corner of lands of Jacob Reno and Esther Miller, and the viewers have endeavored to correct the point of ending of a road laid out different from both petition and order. 2. The order directs the viewers to vacate a road, and lay out another in lieu thereof between different points, and in an entirely different direction; thus giving to one set of viewers the powers that can only be exercised by two juries. 3. A straight road is vacated—part of old Newport road laid out sixty years ago; and a change in the same will be productive of great inconvenience to the public.

An additional exception was afterwards filed, to the effect, that

[Hess's Mill Road.]

the road reported was recommended to be opened of the width of 28 feet; whereas the old Newport road, part of which was vacated, was 33 feet wide.

In March, 1853, the report was set aside, because the portion of the road laid out did not end where the portion of the old road asked to be vacated ends.

It was assigned for error, That the Court erred in setting aside the report on the second exception; and that they should have confirmed the report.

*Frazer*, for petitioners.—The court set aside the report on the second exception, because the road laid out, *although it commenced at the beginning of the road vacated*, did not run *to the termination of the road vacated*, although it did run into the newly-laid-out road, leading from the old Philadelphia road at a corner of Catherine Yeates's land, to *a stone*, a corner of Henry Krider and late Levi Bushong, *the termination of the vacated road*.

That is, the Court say, that the viewers must lay out the new road by courses and distances, to the point of termination of the vacated road, and not enter a road already laid out which leads and runs to that very point. That the viewers cannot adopt part of a road already laid out leading to the point of termination, although they may run over that same road, lay it out again, and thus comply with the law.

It was contended that it was not necessary to report a road on the bed of a public road already laid out, and leading to the point of termination of the road to be vacated. 8 *Barr* 485 was cited.

*Ellmaker*, contrà.—The case in 2 *Rawle* 421 was cited as deciding that, " though road viewers are restricted to the space between the points specified in the order, yet they may carry the road to the point designated, partly over the bed of a road already laid out and opened." But it was said that, in the present case, the viewers do not make *a part of their report* the road leading from the old Philadelphia road referred to as confirmed at April sessions, 1851; they *stopped* at the public road, which, it was alleged on the part of petitioners, leads to the point of termination prayed for. It was said, that the viewers should have reported as far as the said point of termination; but that, in fact, they had not laid out any road for near two-thirds of the distance between the points of the road vacated.

The opinion of the Court was delivered, May 19, 1853, by

BLACK, C. J.—The petition prayed that an old road might be vacated and a new one laid out to supply it, and so ran the order. The viewers reported in favor of the vacation, and, in lieu of the

[Hess's Mill Road.]

old road, laid out another from the place of beginning, not to the terminus of the old road, but to another point intersecting another road, which did run to the terminus.

If it was more advantageous to the public that the vacated road should be supplied in part by another already laid out, the viewers were right in adopting it. If the best route between the points laid down in the order was along the courses previously chosen for another public road, they were surely not bound to avoid it at the cost of more money to the township, and greater loss to the land-owners or less convenience to the people. Neither was it necessary that the viewers should re-survey the road adopted. It could do no possible good, and works of supererogation are not required.

The order of the Quarter Sessions setting aside the report is reversed, and the report is reinstated.